# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| NFC TECHNOLOGY, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 2:13-cv-1058 |
| | The Hon. Rodney Gilstrap |
| HTC AMERICA, INC., LG ELECTRONICS USA, INC, AND LG ELECTRONICS MOBILECOMM U.S.A, INC. d/b/a LG MOBILE PHONES, | |
| | Jury Trial Demanded |
| Defendants. | |

## DEFENDANTS LG ELECTRONICS U.S.A, INC. AND LG ELECTRONICS MOBILECOMM U.S.A., INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................3

        A.      The Parties and Patents ..............................................................................3

        B.      Procedural History and Related Litigation ...............................................5

        C.      The Accused Products.................................................................................5

                1.      The LG Accused Products .................................................................5

                2.      Operations Related to the LG Accused Products and Identified
                        Components .......................................................................................6

III.    ISSUES TO BE DECIDED ....................................................................................7

IV.     ARGUMENT ..........................................................................................................7

        A.      NFCT's Claims Against LG Should be Dismissed .................................7

                1.      Legal Standard for Misjoinder ..........................................................7

                2.      NFCT Did Not Properly Join LG Under 35 U.S.C. § 299 .............9

                        a.      The allegations against LG and HTC do not implicate the
                                same "accused products".........................................................9

                        b.      The allegations against LG and HTC do not raise from the
                                same transaction or occurrence ...............................................9

                        c.      The Court should dismiss this misjoined case ......................12

        B.      In the Event the Court Severs NFCT's Claims Against LG, Such Claims
                Should Be Transferred to the Southern District of California ..............12

                1.      Legal Standard for Transfer of Venue .............................................12

                2.      NFCT Could Have Filed this Case in the Southern District of
                        California .........................................................................................14

                        a.      LGEMU resides in the Southern District of California ..............14

                        b.      LGEUS is subject to personal jurisdiction in the Southern
                                District of California..............................................................14

                3.      The Private and Public Interest Factors Weigh in Favor of Transfer ......16

                        a.      All of the Private Interest Factors Weigh in Favor of Transfer ...17

i

**TABLE OF CONTENTS (cont'd)**

Page

i. Relative Ease of Access to Sources of Proof ...................17

ii. Availability of Compulsory Process ...............................20

iii. Cost of Attendance for Willing Witnesses.......................21

iv. Other Practical Problems ..................................................23

b. All of the Public Interest Factors Weigh in Favor of Transfer or Are Neutral ............................................................................23

i. Administrative Difficulties Flowing From Court Congestion .......................................................................23

ii. The Local Interest in Having Localized Interests Decided at Home.............................................................24

iii. The Familiarity with Patent Law and Avoidance of Potential Conflicts of Law ...............................................25

V. CONCLUSION.............................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*AFTG-TG, LLC v. Winbond Elecs. Corp.*,
  689 F.3d 1358 (Fed. Cir. 2012) .............................................................................. 14

*Bridgestone Corp. v. Superior Ct. of Cal., L.A. County*,
  99 Cal. App. 4th 767 (2002) ................................................................................... 14

*Digitech Image Techs., LLC v. Agfaphoto Holding, GMBH*,
  2012 WL 4513805 (C.D. Cal. Oct. 1, 2012)............................................................ 12

*EIT Holdings LLC v. Yelp!, Inc.*,
  2011 WL 2192820 (N.D. Cal. May 12, 2011)......................................................... 12

*GeoTag, Inc. v. Starbucks Corp.*,
  2013 WL 890484 (E.D. Tex. Jan. 14, 2013)............................................................ 21

*Golden Bridge Tech., Inc. v. Apple Inc.*,
  2012 WL 3999854 (C.D. Cal. Sept. 11, 2012) ........................................................ 11

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) .............................................................................. 16

*In re Genentech Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ........................................................................ 17, 23

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) .............................................................................. 20

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) .............................................................................. 19

*In re Nintendo*,
  589 F.3d 1194 (Fed. Cir. 2009) .................................................................. 13, 16, 24

*In re TS Tech*,
  551 F.3d 1315 (Fed. Cir. 2008) ............................................... 13, 16, 17, 22, 24, 25

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...................................................................... 13, 14, 21

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (en banc) ....................................................... 13, 17, 24

iii

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Ingeniador, LLC, v. Adobe Sys. Inc.,*
  2014 WL 105106 (E.D. Tex. Jan. 9, 2014)................................................................. 14, 20, 23

*Innovus Prime, LLC v. LG Electronics, Inc.,*
  2012 WL 161207 (N.D. Cal. Jan. 18, 2012) ...................................................................... 8, 12

*Kalie v. Bank of Am. Corp.,*
  __ F.R.D. __, 2013 WL 4044951 (S.D.N.Y. Aug. 9, 2013) .................................................... 12

*LSI Indus. v. Hubbell Lighting, Inc.*
  232 F.3d 1369 (Fed. Cir. 2000) ........................................................................................... 14

*Motive LLC v. Nintendo Co. Ltd.,*
  2009 WL 1882836 (E.D. Tex. Jun. 30, 2009) ....................................................................... 24

*Norman IP Holdings, LLC v. Lexmark Int'l,*
  2012 WL 3307942 (E.D. Tex. Aug.10, 2012) ................................................................. 10, 11

*Nuance Commc'ns, Inc. v. Abbyy Software House,*
  626 F.3d 1222 (Fed. Cir. 2010) ........................................................................................... 15

*Optimum Power Solutions LLC v. Apple Inc.,*
  2011 WL 4387905 (N.D. Cal. Sept. 20, 2011) ..................................................................... 12

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004) .............................................................................................. 14

*VE Hold. Corp. v. Johnson Gas Appliance Co.,*
  917 F. 2d 1574 (Fed. Cir. 1990) ......................................................................................... 13

**Statutes**

28 U.S.C. § 1391(c) .................................................................................................................. 13

28 U.S.C. § 1400(b) .................................................................................................................. 13

28 U.S.C. § 1404(a) ............................................................................................................... 1, 13

35 U.S.C. § 299.................................................................................................................... 1, 8, 9

**Other Authorities**

157 Cong. Rec. H4420-06 (2011)............................................................................................... 8

iv

## <u>TABLE OF AUTHORITIES (cont'd)</u>

<u>Page(s)</u>

Cal. Civ. Proc. Code § 410.10 ................................................................ 14

H.R. Rep. No. 112-98, at 54 .................................................................. 8

**Rules**

Fed. R. Civ. P. 45 (d)(3)(A) .................................................................. 20

Fed. R. Civ. P. 45(a)(2), (c)(1)(A) ........................................................ 20

Fed. R. Civ. P. 45(c)(1)(B) ............................................................. 20, 21

| Table of Exhibits in Support of LG's Motion | |
|---|---|
| **Mtn. Exhibit** | **Description[1]** |
| **1.** | Nov. 19, 2013 Certificate of Incorporation of NFC Technology, LLC |
| **2.** | France Brevets website, indicating contact information |
| **3.** | LinkedIn page for Mr. Bruno Charrat |
| **4.** | LinkedIn page for Mr. Michel Martin |
| **5.** | LinkedIn page for Mr. Olivier Carron |
| **6.** | June 21, 2012 Press Release by Inside Secure |
| **7.** | Patent Assignment Abstract of Title for U.S. Patent No. 7,665,664 |
| **8.** | Patent Assignment Abstract of Title for U.S. Patent No. 6,700,551 |
| **9.** | Excerpt of Dec. 5, 2013 German complaint filed by France Brevets |
| **10.** | Calculation of distance between San Diego, CA and Marshall, TX |
| **11.** | Calculation of distance between San Jose, CA and San Diego, CA |
| **12.** | Calculation of distance between San Jose, CA and Marshall, TX |
| **13.** | Excerpt of LegalMetric Report re Southern District of California |
| **14.** | Excerpt of LegalMetric Report re Eastern District of Texas |
| **15.** | Excerpt of LegalMetric Report re Northern District of California |
| **16.** | Inside Secure website, indicating location of headquarters |
| **17.** | Declaration of Eric Ley of LG Electronics MobileComm USA, Inc. |
| **18.** | Declaration of John Taylor of LG Electronics U.S.A., Inc. |
| **19.** | Declaration of James N. Casey of NXP Semiconductors USA, Inc. |

---

[1] Pursuant to Local Rule CV-7(b), relevant portions of the exhibits have been highlighted in yellow.

Defendants LG Electronics U.S.A, Inc. ("LGEUS") and LG Electronics MobileComm

U.S.A., Inc. ("LGEMU") (collectively, "LG") respectfully submit this motion to dismiss

plaintiff NFC Technology, LLC's ("NFCT") claims against LG pursuant to 35 U.S.C. § 299 or, in

the alternative, sever NFCT's claims against LG and transfer them to the Southern District of

California pursuant to 28 U.S.C. § 1404(a).[2]

## I.    INTRODUCTION

This case against LG should either be dismissed for misjoinder, or severed and

transferred to a more convenient venue.  NFCT improperly joined LG and the other named

defendant HTC America, Inc. ("HTC") in this case.  Section 299 of Title 35 precludes joinder of

multiple defendants in the same action unless the infringement allegations arises from the same

transaction or occurrence "relating to the making, using, importing into the United States,

offering for sale, or selling of *the same accused product or process*." 35 U.S.C. § 299(a)

(emphasis added).  Because LG and HTC do not even have the same accused products, the clear

language of § 299 precludes NFCT's improper misjoinder and the action should be dismissed.

Should the Court prefer to sever NFCT's misjoined claims instead of dismissing the

action, then LG respectfully requests transfer of the claims against LG to the Southern District of

California.  This case and its parties have no relevant ties to the Eastern District of Texas.  To the

contrary, the vast majority of the evidence and witnesses are located either in or near the

Southern District of California, such that a transfer to that district is appropriate.

Transfer is warranted because any perceived ties to this District were manufactured for

the purposes of this litigation.  Indeed, plaintiff NFCT was incorporated on November 19,

2013—just *sixteen* days before it filed this suit.  Worse yet, the patents-in-suit were assigned to

---

[2] If the Court determines that the Northern District of California is the most convenient
venue, LG would alternatively request transfer to that venue.

this newly-created shell entity on November 28, 2013, which is just **seven** days before the filing

of the complaint on December 5, 2013.  Moreover, lifting the shroud of NFCT's corporate shell

reveals that NFCT is managed and owned by France Brevet S.A.S. ("France Brevet"), which is a

French patent assertion entity funded by the French government, which is located in Paris,

France, and which has no ties to this District.  In short, NFCT exists solely to devise some

illusory ties to this District.

Similarly, LG has no ties to this District, and none pertaining to the Accused Products.

LGEMU, which is based in San Diego, California, is responsible for importing, testing,

marketing, and selling the Accused Products.  As a result, the relevant U.S.-based documents and

witnesses related to such functions are in San Diego.  The other named LG defendant, LGEUS,

is the corporate parent of LGEMU, has no ties to this District, and provides support functions for

LGEMU's California activities.

In addition to the LG Defendants' connections to California, other documents and

witnesses with information about relevant components are also located in California.  One of

NFCT's infringement allegation in the complaint focuses on "NXP semiconductors chips and

other components with Near Field Communication (NFC) capability" that are allegedly found in

some Accused Products.  [Complaint at ¶ 7.]  Chip supplier NXP does not have personnel or an

office in this District.  Instead, NXP's U.S. headquarters is in San Jose, California and much of

the U.S.-based research and development, design, testing, and sales activities takes place in

California.  What is more, the head of NXP's Near Field Communications business resides in the

Southern District of California.

In sum, because NFCT's ties are merely an artifact of litigation while LG and a relevant

component supplier, as well as the attendant documents and witnesses are all located in or near

the Southern District of California, LG respectfully requests that this Court, if severance is

granted instead of dismissal, transfer this case to the Southern District of California under 28

U.S.C. § 1404(a).

## II.    BACKGROUND

### A.    The Parties and Patents

Defendant LGEMU is a California corporation with its principal place of business in San

Diego, California.  [Ex. 17 (Decl. of Eric Ley ("Ley Decl.")) at ¶ 3.]  LGEMU is the LG entity

responsible for importing, testing, marketing, and sale of LG-branded mobile phone products

(such as the Accused Products[3]) in the United States, including obtaining the LG-branded mobile

products from the foreign manufacturer and importing them into the United States.  [*Id.* at ¶ 7;

Ex. 18 (Decl. of John Taylor ("Taylor Decl.")) at ¶ 6.]  LGEMU employs approximately 131

people in San Diego, California, and approximately 58 people in San Jose, California

respectively.  [Ex. 17 (Ley Decl.) at ¶¶ 9-10.]  LGEMU's San Diego facility is responsible for

selling and testing the Accused Products.  [*Id.* at ¶¶ 9, 12.]  Among other things, LGEMU's San

Diego-based employees conduct testing of these devices to ensure that the LG-branded

smartphones (including the Accused Products) meet the mobile carrier's technical requirements

and specifications.  [*Id.*]  In addition, LGEMU's facility in San Jose focuses on certain software

operating on the Accused Products.  [*Id.* at ¶ 10.]

LGEMU is a wholly owned subsidiary of LGEUS.  [*Id.* at ¶ 6; Ex. 18 (Taylor Decl.) at

¶ 5.]  LGEUS has performed and continues to provide certain support functions for LGEMU,

including legal support, human resources, accounting, and public relations.  [Ex. 18 (Taylor

---

[3] NFC's Complaint expressly accuses the following LG products: LG Intuition VS950, LG Optimus 4X HD P880, LG Optimus G E970, LG Optimus G Pro F240L, LG Optimus L5 E610, LG Optimus LTE II LG-F160LV, LG Optimus Vu F100L, LG Viper 4G LTE LS840, LG Escape LG-P870, LG Optimus Elite, LG Spectrum 2, and LG Mach.  [Complaint at ¶ 7.]

Decl. at ¶ 7.]  LGEUS does not make, use, sell, offer for sale, or import into the United States

any mobile phone products, including the Accused Products.  [*Id.*]  Neither LGEMU nor LGEUS

has any facility or personnel within the Eastern District of Texas.  [*Id.* at ¶ 8; Ex. 17 (Ley Decl.)

at ¶ 11.]

      Not only does LG lack any connection to this District, but plaintiff NFCT's ties to Texas

are illusory and litigation-driven.  Although it is the purported assignee of the two Asserted

Patents,[4] NFCT was incorporated on November 19, 2013, just *sixteen* days before the filing of

the complaint on December 5, 2013.  [Ex. 1 (NFCT Cert. of Incorp.).]  Although NFCT's

complaint identifies a principal place of business at 100 West Houston, Marshall, Texas 75671,

NFCT has not alleged or shown that it has any employee or officer within this District.  To the

contrary, NFCT's incorporation papers show that its owner is France Brevet, which is a French

company located in Paris, France.  [*Id.* (listing France Brevets as sole governing person); Ex. 2

(France Brevets' website showing Paris address).]

      NFCT's control of the Asserted Patents before filing of the suit is even shorter than its

corporate life, and its connections to these patents even more tenuous.  Indeed, the named

inventors – Bruno Charrat, Michael Martin, and Olivier Carron – all currently reside in France.

[Exs. 3-5 (biographical information of inventors).]  These inventors assigned their rights in the

Asserted Patents to a French company named Inside Secure S.A.S. ("Inside Secure"), which has

undergone numerous corporate name changes over time—with the names including Inside

Contactless S.A. and Inside Technologies S.A.—and which has its headquarters in the south of

France.  [Ex. 16 (Inside Secure's website showing headquarters address in Meyreuil, France).]

To generate revenues, Inside Secure launched a "patent licensing program with France Brevets,

_____

[4] The Asserted Patents in this case are U.S. patent No. 7,665,664 ("the '664 patent") and
U.S. patent No. 6,700,551 ("the '551 patent").

the first investment fund dedicated to patent promotion and monetization in Europe." [Ex. 6 (press release).]  Under this agreement, France Brevets (which is the owner of plaintiff NFCT) manages all efforts under the NFC licensing program.  [*Id.*]  Critically, Inside Secure retained ownership over the Asserted Patents until *seven* days before the filing of the complaint, at which time Inside Secure apparently assigned these patents to NFCT on November 28, 2013.  [Exs. 7-8 (assignment history from the PTO).]  And these eleventh-hour assignments were recorded on December 11, 2013, about six days after the filing of the complaint.  [*Id.*]

### B.     Procedural History and Related Litigation

On December 5, 2013, NFCT filed the present patent infringement suit against LG and HTC asserting the '551 and '664 patents.  On that same day, France Brevet filed a complaint for patent infringement in Germany against a related LG entity called LG Electronics Deutschland GmbH.  [Ex. 9 (Excerpt f English Translation of German Complaint).]  In this German suit, France Brevets alleged infringement of three European patents: EP 1 163 718, EP 1 758 049, and EP 1 855 229.  [*Id.* at 2.]  EP 1 163 718 and EP 1 758 049 are the two European counterpart patents to the '551 and '664 patents, respectively.

### C.     The Accused Products

#### 1.     The LG Accused Products

NFCT's Complaint alleges that LG's "mobile phones and/or other devices, having NXP Semiconductors chips and other components with Near Field Communication (NFC) capability" infringe the Asserted Patents.  [Complaint at ¶ 7.]  The complaint separately identifies LG's and HTC's respective accused products, which are listed in the table below:

| LG's Accused Products | HTC's accused devices |
| --- | --- |
| LG Intuition VS950 | HTC Amaze 4G |
| LG Optimus 4X HD P880 | HTC EVO 4G LTE |
| LG Optimus G E970 | HTC First |
| LG Optimus G Pro F240L | HTC One LTE |

| LG's Accused Products | HTC's accused devices |
|---|---|
| LG Optimus L5 E610 | HTC One SV |
| LG Optimus LTE II LG-F160LV | HTC One VX |
| LG Optimus Vu F100L | HTC One X |
| LG Viper 4G LTE LS840 | HTC One X+ |
| LG Escape | HTC One XC |
| LG-P870 | HTC ONE XL |
| LG Optimus Elite | HTC Droid DNA |
| LG Spectrum 2 | HTC Droid Incredible 4G LTE |
| LG Mach | |

[*Id.* at ¶¶ 3, 7.]  As this table demonstrates, there is *no* overlap in the identified LG and HTC accused products.  They are mutually exclusive.

Despite this lack of overlap in accused products, NFCT alleges that joinder of LG and HTC "is proper pursuant to 35 U.S.C. § 299(a) at least because Defendants' infringing products include, comply with, and/or utilize the same NFC standards and include the same NFC chips, the use of which by each Defendant results in infringement of the Asserted patents.  In addition, questions of fact common to all of the Defendants will arise in the action, at least because, upon information and belief, Defendants' common acts of including and/or utilizing common NFC chips."  [*Id.* at ¶15.]  Notably, NFCT's complaint does not identify any transaction or occurrence involving both LG and HTC (which are competitors in the smartphone field) that pertains to the making, using, importing, offering for sale, or selling of the same accused product or process.  [*Id.*]  Further, NFCT does not allege that LG acted in concert with HTC with respect to any of the Accused Products.  [*Id.*]

2.      **Operations Related to the LG Accused Products and Identified Components**

Relevant documents and witnesses related to the testing and selling of the LG Accused Products are located in San Diego, CA.  [Ex. 17, (Ley Decl.) at ¶¶ 9, 12.]  For example, LGEMU's San Diego facility—which employs approximately 131 employees—is responsible for selling and testing the Accused Products.  [*Id.*]

In addition, NFCT has identified "NXP Semiconductors chips and other components with Near Field Communication (NFC) capability" as relevant to its infringement claim.  [Complaint at ¶ 7.]  Therefore, employees and documents relevant to the claims and defenses in this case reside with NXP.  NXP Semiconductors USA, Inc. ("NXP USA") —the United States division of NXP—is headquartered in San Jose, California.   [Ex. 19 (Declaration of James N. Casey ("Casey Decl.")) at ¶ 2.]  NXP USA has 484 employees involved in research, design, testing, and sales activities.  [*Id.*]  Over 250 of those employees are based at NXP USA's headquarters in San Jose.  [*Id.*]  Some of these employees in San Jose work on selling and supporting NXP's Near Field Communication chip sets.  [*Id.*]  The head of NXP's Near Field Communication business, Mr. Jeff Miles, resides in Cardiff, California, which is in the Southern District of California.  [*Id. at ¶ 3.*]  Mr. Miles regularly commutes to NXP USA's facility in San Jose.  [*Id.*]

## III.    ISSUES TO BE DECIDED

1.    Should NFCT's claims against LG be dismissed for violating 35 U.S.C. § 299(a), where the allegations against LG and HTC do not implicate the same accused products and do not arise from the same transaction or occurrence?

2.    If the Court decides to sever rather than dismiss the claims against LG, should the severed case against LG be transferred to the Southern District of California where (i) the case could have been originally brought because LGEMU resides there, (ii) there are substantial connection to California, including witnesses and documents of the defendants and its chip supplier, and (iii) there is no proper connection to the Eastern District of Texas?

## IV.    ARGUMENT

### A.    NFCT's Claims Against LG Should be Dismissed

#### 1.    Legal Standard for Misjoinder

The recently enacted *Leahy-Smith America Invents Act* ("AIA") adopts a strict standard

for joining multiple defendants in a patent infringement case by imposing two separate conditions for joinder:

> (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the ***same transaction, occurrence, or series of transactions or occurrences*** relating to the making, using, importing into the United States, offering for sale, or selling of the ***same accused product*** or process;
> **and**
> (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a) (emphases added.).  One of these conditions requires that the same transaction or occurrence relate to "the same accused product or process."  Congress further clarified that common allegations of patent infringement are insufficient for joinder:

> (b) *Allegations insufficient for joinder.* – For purposes of this subsection, accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit.

35 U.S.C. § 299(b) .

As the legislative history of the statute indicates, Congress enacted this provision to "end[] the abusive practices of treating as codefendants, parties who make completely different products and have no relation to each other."  157 Cong. Rec. H4420-06 (2011) (statement of Rep. Bob Goodlatte); *see also* H.R. Rep. No. 112-98, at 54 ("The Act also addresses problems occasioned by the joinder of defendants (sometimes numbering in the dozens) who have tenuous connections to the underlying disputes in patent infringement suits.").

In evaluating a misjoinder challenge, a court "solely looks to the allegations in Plaintiff's operative complaint," without considering other allegations or speculations such as those raised in plaintiff's responsive briefs.  *Innovus Prime, LLC v. LG Electronics, Inc.*, 2012 WL 161207, at * 3 (N.D. Cal. Jan. 18, 2012) (ordering dismissal for misjoinder).

### 2.     NFCT Did Not Properly Join LG Under 35 U.S.C. § 299

#### a.     The allegations against LG and HTC do not implicate the same "accused products"

NFCT did not properly join LG in this action under 35 U.S.C. § 299, because NFCT's complaint fails to allege infringement arising out of the same transaction or occurrence with respect to the *same accused product* between LG and HTC.  Indeed, as the lists of accused LG and HTC products in the Complaint show (and as listed above), there is *no* overlap between the identified LG and HTC accused products.  [Complaint at ¶¶ 3, 7; *see also* Part II.C.1., *supra* at pp. 5 (listing LG and HTC accused products side by side).]

Moreover, despite NFCT's allegations regarding LG's and HTC's use of "NXP chips," NFCT admits that the accused products are the LG and HTC products—not the NXP chips.  [*Id.* at ¶ 15 ("Joinder of the Defendants is proper pursuant to 35 U.S.C. § 299(a) at least because *Defendants' infringing products* include, comply with, and/or utilize the same NFC standards and include the same NFC chips, the use of which by each Defendant results in infringement of the Asserted patents." (emphasis added)).]  Further confirming that the NXP chips are not the accused products is NFCT's decision not to name NXP as a defendant in this action (or any other lawsuit) and the lack of any allegation that the NXP chips, on their own, infringe the Asserted Patents.  NFCT's attempted joinder thus violates Section 299(a), which clearly requires a showing of infringement with respect to the "same accused product or process."  35 U.S.C. § 299(a).

#### b.     The allegations against LG and HTC do not raise from the same transaction or occurrence

Not only did NFCT fail to satisfy the "same accused product or process" requirement of the statute, but it did not allege infringement "arising out of the same transaction or occurrence" as mandated by the statute. 35 U.S.C. § 299.  In *In re EMC Corp.*, the Federal Circuit held that

"the same transaction or occurrence" test is not met "unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts."  677 F.3d 1351, 1357-58 (Fed. Cir. 2012) (citations omitted).[5]  As the court explained, "[t]he sameness of the accused products is not enough to establish that claims of infringement arise from the 'same transaction.'"  *Id.* at 1359.  Here, NFCT fails to plead any facts that would even show "an aggregate of operative facts" between NFCT's separate claims against LG and HTC.  And the fact that LG's and HTC's respective products happen to be smartphones with analogous features is legally insufficient to support joinder.

The additional factors considered for purposes of joinder do not help NFCT.  In *EMC,* the Federal Circuit listed additional factors that a court may consider in weighing the propriety of joinder: (1) the temporal proximity of alleged infringement; (2) the relationship among defendants; (3) the use of common components in the accused products; (4) licensing or technology agreements between defendants; (5) shared development and manufacturing; and (6) whether the damages sought are based on lost profits.  *Id.* at 1359-60.  Under the facts of the present case, these factors demonstrate that the claims against LG and HTC do not arise "out of the same transaction or occurrence."

First, as to the temporal proximity of alleged infringement, NFCT fails to temporally link LG and HTC's separate alleged acts of infringement.  [*See generally* Complaint (no relevant allegation).]

Second, as to the relationship between LG and HTC, NFCT merely alleges that both the

_____

[5] Although the Federal Circuit specifically limited its holding in *In re EMC* to cases arising under Rule 20, and not those arising under the AIA, district courts have looked to the Federal Circuit's reasoning in analyzing whether the same "transaction or occurrence" requirement has been satisfied.  *See, e.g., Norman IP Holdings, LLC v. Lexmark Int'l*, 2012 WL 3307942 (E.D. Tex. Aug.10, 2012).

defendants' respective accused products use near field communication standards, without

identifying which near field communications standards are allegedly practiced by these products.

[*Id.*]  Even assuming that the LG and HTC accused products practice the same standard, that

point is insufficient because "[t]he sameness of the accused products is not enough to establish

that claims of infringement arise from the 'same transaction.'"  *In re EMC Corp.*, 677 F.3d at

1359.  After all, LG and HTC are direct competitors in the smartphone market and have no

corporate affiliation whatsoever.  They are being sued for independent alleged acts of

infringement.

Third, as to the use of common components, NFCT's allegation that the LG and HTC

accused products both use "NXP chips" is insufficient, because the plaintiff does not identify a

single NXP chip that LG's Accused Products and HTC's accused devices commonly use.  Such

generalized allegations are insufficient to meet the "same transaction or occurrence" requirement.

*See, e.g.*, *Norman IP Holdings, LLC v. Lexmark Int'l*, 2012 WL 3307942, at *3 (E.D. TX

Aug.10, 2012) (finding plaintiff's "broad allegations regarding common processor or processor

family designs … insufficient to establish that the allegations of infringement against each

defendant relate to a common transaction or occurrence for joinder purposes.").  But even if

NFCT could plead with the necessary specificity, the use of a single common component is

insufficient to justify joinder.  *See, e.g.*, *Golden Bridge Tech., Inc. v. Apple Inc.*, 2012 WL

3999854, at *3 (C.D. Cal. Sept. 11, 2012) (ruling that "the fact that they may use an identical

baseband processor—a fact disputed by Defendants—by itself does not establish that joinder is

proper").  NFCT's pleading leaves LG, HTC, and the Court, guessing as to the existence of an

actual link between LG's and HTC's respective accused products.

As to the remaining three factors, LG and HTC have not entered into any licensing or

technology agreements, LG and HTC do not participate or otherwise share in development and manufacturing activities, and NFCT is a non-practicing entity such that NFCT is not entitled to damages based on lost profits.  Accordingly, NFCT has not satisfied the "same transaction or occurrence" requirement of § 299(a).

**c.      The Court should dismiss this misjoined case**

Because NFCT fails to meet at least the requisite "same accused product" and "same transaction or occurrence" prongs of 35 U.S.C. § 299, NFCT's claims against LG should be dismissed.  *E.g., Digitech Image Techs., LLC v. Agfaphoto Holding, GMBH*, 2012 WL 4513805 (C.D. Cal. Oct. 1, 2012) (dismissing defendants that were misjoined in violation of § 299); *Innovus Prime*, 2012 WL 161207, at * 3 (dismissing, rather than severing, misjoined defendants); *Optimum Power Solutions LLC v. Apple Inc*., 2011 WL 4387905, at *3 (N.D. Cal. Sept. 20, 2011) (finding that defendants in a patent infringement case had been misjoined, and dismissing without prejudice the plaintiff's claims against all but one defendant); *EIT Holdings LLC v. Yelp!, Inc.*, 2011 WL 2192820, at *3 (N.D. Cal. May 12, 2011) (same); *see also Kalie v. Bank of Am. Corp.*, __ F.R.D. __, 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013) (holding that where there is "no common transaction or occurrence, severance and dismissal of the misjoined claims is mandatory").

Alternatively, should the Court decline to dismiss, it should sever LG and HTC to remedy the misjoinder.

**B.      In the Event the Court Severs NFCT's Claims Against LG, Such Claims Should Be Transferred to the Southern District of California**

**1.      Legal Standard for Transfer of Venue**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

12

28 U.S.C. § 1404(a).

The first question when analyzing eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).  Venue in a patent infringement action is proper in the district where the defendant corporation resides, or where the defendant has allegedly committed acts of infringement and has a regular and established place of business.  28 U.S.C. § 1400(b).  For purposes of venue, a corporate defendant resides in any judicial district in which it is subject to personal jurisdiction at the time the action commences. 28 U.S.C. § 1391(c); *VE Hold. Corp. v. Johnson Gas Appliance Co.,* 917 F. 2d 1574, 1584 (Fed. Cir. 1990) (incorporating 28 U.S.C. § 1391(c) into 28 U.S.C. § 1400(b)).

If the Court concludes that the transferee forum is a proper venue, it should grant the requested transfer where, as here, the transferee venue is "clearly more convenient" than the transferor venue.  *In re Nintendo,* 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc) ("*Volkswagen II*").  In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case.  *Nintendo,* 589 F.3d at 1198; *TS Tech,* 551 F.3d at 1319.

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Nintendo,* 589 F.3d at 1198.  As for the public interest factors, they are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the

law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws in the application of foreign law.  *Id.*

2.     **NFCT Could Have Filed this Case in the Southern District of California**

The threshold inquiry for a § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen I,* 371 F.3d at 203.

a.     **LGEMU resides in the Southern District of California**

NFCT cannot credibly dispute that it could have sued LG in the Southern District of California.  LGEMU is incorporated in California, and has its headquarters in San Diego. [Ex. 17 (Ley Decl.) at ¶ 3.]  LGEMU therefore resides in San Diego, and the Southern District of California has personal jurisdiction over it.  *See Ingeniador, LLC, v. Adobe Sys. Inc.*, 2014 WL 105106, at *1 (E.D. Tex. Jan. 9, 2014) (holding that suit could have been brought in venue where the defendant resides).

b.     **LGEUS is subject to personal jurisdiction in the Southern District of California**

NFCT could also have brought suit against LGEUS in the Southern District of California, because that court has personal jurisdiction over LGEUS at least based on specific jurisdiction.

"Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.'"[6] *AFTG-TG, LLC v. Winbond Elecs. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012) (*quoting LSI Indus. v. Hubbell Lighting, Inc*. 232 F.3d 1369, 1375 (Fed. Cir. 2000) (further citations omitted)).  The Federal Circuit applies a three-part test to determine

---

[6] California's long-arm statute allows the exercise of personal jurisdiction to the full extent permitted under the United States and California Constitutions. Cal. Civ. Proc. Code § 410.10; *Bridgestone Corp. v. Superior Ct. of Cal., L.A. County,* 99 Cal. App. 4th 767, 773 (2002).  Because California's long-arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal law are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

14

whether specific jurisdiction exists: "(1) whether the defendant purposefully directs activities to the forum's residents, (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair."  *Id.* (*citing Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010)).

LGEUS is subject to, at least, the specific jurisdiction of the Southern District of California because it has purposefully directed its activities to California and its residents by providing and performing certain support functions for the mobile phone business of San Diego-based LGEMU, including legal functions, human resources, accounting, and public relations. [Ex. 18 (Taylor Decl.) at ¶ 7.]  By assisting its subsidiary LGEMU with these support functions related to the LG Accused Products, LGEUS has purposefully availed itself of the benefits and protections of the State of California.  *See Nuance Commc'ns,* 626 F.3d at 1232 (holding that foreign defendant purposefully directed its activities to California because defendant operated under agreement with its California sister company to sell, reproduce, and modify the accused products in the United States).

LGEUS's California-directed activities directly relate to NFCT's claims here because these activities support, and are thus tied to, LGEMU's importation and sales of LG Accused Products—the very act that NFCT asserts to be infringement of the patents-in-suit.  [Complaint at ¶ 8 ("LG is doing business in the United States … by making, using, selling, importing, and/or offering for sale LG NFC Products that infringe the patent claims involved in this action.").]

At base, it is and has been foreseeable that LGEUS, who purposely avails itself of California's jurisdiction, could be sued in the Southern District of California for California-based activities related to the LG Accused Products.  Accordingly, LGEUS is subject to specific personal jurisdiction in California and the Southern District of California.  Because this action

could have originally been brought there, it is eligible to be transferred to that venue.[7]

### 3. The Private and Public Interest Factors Weigh in Favor of Transfer

Transfer is proper here because the parties, possible witnesses, and evidence are located in or near the Southern District of California, while having little to no connection to the Eastern District of Texas.  Indeed, the facts here are similar to several recent cases in which the Federal Circuit granted writs of mandamus and ordered transfers because the parties, witnesses, and evidence were more conveniently located relative to the transferee district and had little connection to the transferor district.

For example, in *In re Nintendo Co.*, the Federal Circuit granted a writ of mandamus and ordered transfer of an action where (i) the majority of the witnesses and evidence were located in Washington, Japan, Ohio, and New York, and thus closer to the Western District of Washington, (ii) no witnesses or evidence were located in the Eastern District of Texas, and (iii) "few or no convenience factors favor[ed] the venue chosen by the Plaintiff." 589 F.3d at 1198.  In *In re Nintendo*, the Federal Circuit further held that it was improper to consider the centralized location of the Eastern District of Texas when no identified witnesses or documents reside there. *Id.* at 1199-1200.  As another example, the Federal Circuit in *In re TS Tech USA Corp.* ordered transfer where the witnesses and evidence were located in Ohio, Michigan, and Canada and thus closer to the Southern District of Ohio, and there was "no relevant connection" to the Eastern District of Texas. 551 F.3d at 1320-21; *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1254-56 (Fed. Cir. 2010) (ordering transfer to Northern District of California where certain defendants were headquartered in Northern California, along with a substantial number of party witnesses);

---

[7] In the alternative, LG requests transfer to the Northern District of California.  Because the State of California has personal jurisdiction over both LGEMU and LGEUS for the reasons set forth above.  Moreover, the State of California has specific jurisdiction over LGEMU based on its facilities in San Diego, California and San Jose California.  Therefore, this case could have also originally have been brought in the Northern District of California.

*In re Genentech Inc.*, 566 F.3d 1338, 1348 (Fed. Cir. 2009) (ordering transfer to the Northern District of California where two of the three parties were located in California, multiple relevant witnesses were located in California (including the Northern District), and no witnesses or parties were located in (or subject to compulsory process of) the transferor district).

As explained in more detail below, the majority of the relevant witnesses and documents are in or near the Southern District of California.  And while some additional witnesses and documents may be located in France, there is clearly no meaningful connection to this District.

### a.    All of the Private Interest Factors Weigh in Favor of Transfer

### i.    Relative Ease of Access to Sources of Proof

Because the vast majority of evidence relevant to this case is located in or near the Southern District of California, and no evidence exists is in this District, ease of access to sources of proof strongly favors transfer.  As the Fifth Circuit explained in *Volkswagen II*, notwithstanding modern technology, ease of access to sources of proof remains a "meaningful factor" in the § 1404(a) analysis.  *Volkswagen II*, 545 F.3d at 316; *see also In re TS Tech USA Corp.*, 551 F.3d at 1320-21.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d at 1345 (internal quotations omitted).

Here, the vast majority of documents relating to importing, testing, and selling the Accused Products is located in San Diego, California.  LGEMU employs approximately 131 people in San Diego, California and approximately 58 people in San Jose, California [Ex. 17 (Ley Decl.) at ¶¶ 9-10.]  LGEMU's San Diego facility is responsible for testing and selling the Accused Products.  [*Id.* at ¶¶ 9, 12.]  LGEMU employees conduct testing of the Accused Products in San Diego, including ensuring that the LG-branded smartphones (such as the

Accused Products) meet the mobile carrier's technical requirements and specifications. [*Id.*] LGEMU's San Jose facility is involved with activities related to the Accused Products. [*Id*. at ¶ 10.] LGEMU's San Diego facility hosts databases and other repositories having documents related to importing, testing, and selling the accused products. [*Id*. at ¶ 9.] In addition, LGEMU is the LG entity responsible for marketing and sales of LG-branded mobile phone products (including the Accused Products) sold in the United States, including obtaining the LG-branded mobile products from the foreign manufacturer and importing them into the United States. [*Id*. at ¶ 7; Ex. 18 (Taylor Decl.) at ¶ 7.] None of LG's witnesses or documents is located within this District. [Ex. 18 (Taylor Decl.) at ¶ 8; Ex. 17 (Ley Decl.) at ¶ 11.]

In addition to LGEMU, NXP's presence in California supports transfer. Indeed, NFCT's complaint expressly identifies NXP chips used in LG's Accused Products as components relevant to its infringement allegations. [Complaint at ¶ 7.] NXP, which is the chip supplier, has significant operations in California, including the Southern District of California. For example, NXP USA conducts research and development, testing, and sales activities related to its Near Field Communications chip sets in San Jose, California. [Ex. 19 (Casey Decl.) at ¶ 2.] In addition, the head of NXP's Near Field Communication business, Mr. Jeff Miles, resides in Cardiff, California, which is in the Southern District of California. [*Id*. at ¶ 3.] As a result, employees and documents relevant to these activities are in San Jose, California and San Diego, California. [*Id*. at ¶¶ 2-3.] In other words, documents concerning the detail, operation, and architecture of the NXP chips in the LG Accused Products, as well as NXP employees with relevant knowledge, will likely be located in California. Accordingly, third-party witnesses and documents relevant to the claims and defenses in this case reside in California, including the state's Southern District.

On the other hand, Plaintiff NFCT's only ties to this District are "recent, ephemeral, and an artifact of litigation" and should not be entitled to deference.  *In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2011).  The Federal Circuit emphasized this point when it granted a writ of mandamus and ordered transfer, because the act of incorporating in Texas "***sixteen days*** before filing suit" is "no more meaningful, and no less in anticipation of litigation," than moving relevant documents to an office in Texas staffed with no employees.  *Id.* (emphasis added).  Like the plaintiff in *In re Microsoft*, plaintiff NFCT became incorporated in Texas on November 19, 2013, exactly ***sixteen days*** before filing the present litigation.  [Ex. 1 (NFCT Incorp. Cert.).]  Equally egregious, plaintiff NFCT purportedly became the assignee of the Asserted Patents on November 28, 2013, which is just ***seven*** days before filing suit.  [Exs. 7-8 (Assignment summaries).]  As the Federal Circuit made clear, such an eleventh-hour attempt to secure venue is *per se* venue manipulation and, therefore, not meaningful in a court's venue analysis.  Because NFCT's incorporation in Texas only served to manipulate venue, any ties that NFCT may allege should not be entitled to deference.

Worse yet, any relevant documents and witnesses related to the Asserted Patents, or NFCT's or its owner France Brevet's decision to sue LG, are located in France.  France Brevet, a French company located in Paris and funded by the French government, controls NFCT, is responsible for managing the licensing and litigation of the Asserted Patents and for coordinating a global attack against LG and its related entities.  [Ex. 1 (NFCT Incorp. Cert.) (showing France Brevets S.A.S. as NFCT's sole "governing person"); Ex. 2 (indicating Paris, France, address for France Brevets).]  For example, France Brevet has asserted the European counterparts of the Asserted Patents against a related LG entity in Germany.  [Ex. 9 (German complaint).]  Not surprisingly, NFCT's complaint does not allege that any relevant evidence in this case exists

within the Eastern District of Texas.

And to the extent that NFCT tried to manufacture connections to this District by bringing documents to the district in recent weeks, controlling precedent clearly holds that the existence of documents recently transported to a District are irrelevant in a transfer analysis.  *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (holding that the assertion that documents recently moved from California to Texas in anticipation of litigation were "Texas" documents was a "fiction that appeared to be created to manipulate the propriety of venue" and that it was entitled to no weight in the court's venue analysis).  Accordingly, this factor strongly favors transfer.[8]

### ii.      Availability of Compulsory Process

The Southern District of California's ability to compel testimony through subpoena power also favors transfer.  Under Federal Rule of Civil Procedure 45, as recently amended, a subpoena for attendance at a deposition or trial must issue from "the court where the action is pending" and that court may command attendance "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(a)(2), (c)(1)(A).  A court may also enforce a subpoena issued to any non-party witness in the forum state to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B).  A subpoena must be quashed by the district court of the place of compliance.  Fed. R. Civ. P. 45 (d)(3)(A).  As this Court explained, the question related to compulsory process of depositions is "whether there exists any point that is both within the district (and thus subject to the Court's subpoena power) and within 100 miles of the nonparty's location (and thus not subject to a motion to quash)."  *Ingeniador*, 2014 WL 105106 at *2.  For trials, the location at issue is the courthouse.

---

[8] In the alternative, as some documents and witnesses are also located in the Northern District of California and no documents exist in this District, this factor also favors a transfer to the Northern District of California.

In this case, knowledgeable employees of non-party supplier NXP USA will likely be called as witnesses given NFCT's specific identification of the NXP chips in the complaint.  The head of NXP's Near Field Communication business, Mr. Jeff Miles, resides in Cardiff, California, which is in the Southern District of California.  [Ex. 19 (Casey Decl.) at ¶ 3.]  Thus, NXP USA has at least one knowledgeable and key employee that is subject to the compulsory process of the Southern District of California.  Further, NXP USA is headquartered in California and likely has knowledgeable employees residing throughout California.  [*Id.* at ¶ 2.]  NXP may thus have more employees subject to the compulsory process of the Southern District of California for purposes of trial subpoenas.  Fed. R. Civ. P. 45(c)(1)(B).

In contrast, LG is not aware of any third-party witnesses in the Eastern District of Texas with knowledge relevant to this case.  All of the named inventors live in France.  [Exs. 3-5 (biographical info for the named inventors).]   The company orchestrating this litigation, France Brevets, and the original assignee, Inside Secure, are also based in France.  [Ex. 2 & 16.]  As a result, any relevant witnesses for plaintiff are likely located in France.  For the above reasons, this factor weighs in favor of transfer. [9]

### iii.    Cost of Attendance for Willing Witnesses

The cost of attendance for willing witnesses also strongly favors transfer.  This consideration is "[o]ne of the most important factors" in the present analysis.  *GeoTag, Inc. v. Starbucks Corp.*, 2013 WL 890484 at *4 (E.D. Tex. Jan. 14, 2013).  Under the Fifth Circuit's "100 mile" rule, the "factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled" when the distance between the current venue and proposed transferee venue is more than 100 miles.  *Volkswagen I*, 371 F.3d at 204-05.

---

[9] In the alternative, because a number of NXP USA employees are based in San Jose and thus subject to the compulsory process of the Northern District of California, this factor also favors a transfer to the Northern District of California.

As noted above, almost all party and non-party witnesses alike reside in or near the Southern District of California.  For example, LGEMU's San Diego facility employs approximately 131 employees, while none of them is located in the Eastern District of Texas. [Ex. 17 (Ley Decl.) at ¶¶ 9, 11.]  Likewise, LG's component supplier NXP USA has relevant locations in San Diego and San Jose, California, with the head of NXP USA's Near Field Communication business residing in the Southern District of California.  [Ex. 19, (Casey Decl.) at ¶ 3.]

It would be significantly more convenient and much less expensive for LGEMU and NXP to bring their witnesses to the Southern District of California rather than to the Eastern District of Texas.  For example, employees located in Southern California (*e.g.*, San Diego) would need to travel less than 100 miles to the Southern District of California Courthouse whereas a trip to Marshall, Texas would be over 1,350 miles.  [Ex. 10 (distance calculation).] Transferring this case to the Southern District of California would obviate the need for these witnesses to incur unnecessary costs related to plane tickets, rental cars, and hotel rooms.

Similarly, employees located in Northern California (*e.g.*, San Jose) would only need to travel roughly 420 miles to the Southern District of California Courthouse as opposed to the required 1,590-mile trip to Marshall, Texas.  [Exs. 11 & 12 (distance calculation).]  The 1,000-plus extra miles required to bring these witnesses to East Texas rather than Southern California greatly weighs in favor of transfer.  *See, e.g.*, *TS Tech*, 551 F.3d at 1320 (holding that the district court's failure to "considerably weigh" the additional 900 miles witnesses needed to travel to attend trial in the Eastern District of Texas was clear error).

Potential witnesses traveling from France would have to travel more than 4,500 miles regardless of venue, such that "the added inconvenience that would be suffered by these

witnesses in travelling to California rather than Texas is not great, since these witnesses would already be committed to long flights." *Ingeniador*, 2014 WL 105106 at *3 (citing *Genentech*, 566 F.3d at 1344).  All in all, the Southern District of California is considerably more convenient than this District, which greatly weighs in favor of transfer. [10]

### iv.     Other Practical Problems

As this case has just begun, there are no practical problems that would prevent a transfer of this case to the Southern District of California.  LG has filed its answer concurrently with this motion.  The date of the case management conference in this case has yet to be set and no discovery has occurred.  Thus, this factor is at least neutral.

### b.       All of the Public Interest Factors Weigh in Favor of Transfer or Are Neutral

### i.     Administrative Difficulties Flowing From Court Congestion

Transfer of this case to the Southern District of California presents no administrative difficulties flowing from court congestion.  The median time to termination for contested judgment patent cases in the Southern District of California is 25.4 months.  [Ex. 13 (LegalMetrics data for S.D. Cal.).]  The median time to termination for contested judgment patent cases in the Eastern District of Texas is 25.6 months.  [Ex. 14 (LegalMetrics data for E.D. Tex.]  LG's requested transfer would therefore not send the case from a less congested to a more congested docket.  In addition, the Southern District of California, much like this District, has adopted patent local rules and scheduling orders to avoid the congestion that this factor seeks to avoid.[11]  Moreover, the case management conference in this case has not yet occurred, there is no

---

[10] In the alternative, as witnesses are located in both the Southern District of California and the Northern District of California and no documents exist in this District, this factor also favors a transfer to the Northern District of California.

[11] The patent rules for the Southern District of California are available online at: http://www.casd.uscourts.gov/uploads/Rules/Local%20Rules/LocalRules.pdf.

trial date yet, and the parties have not yet exchanged discovery.  Thus, this factor is at least

neutral. [12]

### ii.   The Local Interest in Having Localized Interests Decided at Home

The Southern District of California has a strong interest in the outcome of this case, while

the Eastern District of Texas's interest is minimal.  LGEMU—a California corporation—is

headquartered in San Diego, is the titular importer and seller of the Accused Products, and is a

well-established company in the Southern District of California. [Ex. 17, (Ley Decl.) at ¶¶ 3, 7-

9.]  *Motive LLC v. Nintendo Co. Ltd.*, 2009 WL 1882836 at *6 (E.D. Tex. Jun. 30, 2009) ("As

[Defendant] is incorporated in Washington and has its principal place of business in the Western

District of Washington, that forum's localized interest in this dispute is undisputedly high.").

On the other hand, this District has no meaningful interest in adjudicating this case.  First,

none of the parties, witnesses, or evidence has a connection to this District.  *See In re Nintendo*,

589 F.3d at 1198 ("No parties, witnesses, or evidence have any material connection to the venue

chosen by the plaintiff.  Therefore, the record leaves only the conclusion that the local interest in

Washington clearly favors transfer.").  Second, plaintiff's decision to file suit in the Eastern

District of Texas is not a factor to be considered in the transfer analysis.  *TS Tech*, 551 F.3d at

1320.  Third, any sales of products in this District that are offered for sale nationwide do not

create a local interest.  As both the Fifth and Federal Circuits have ruled, the nationwide sale of

accused products is an interest that "could apply virtually to any judicial district or division in the

United States," and does not therefore give rise to a local interest within this District.

*Volkswagen II*, 545 F.3d at 318; *see also TS Tech*, 551 F.3d at 1322 (observing that products

---

[12] In the alternative, the Northern District of California also has local rules and median time to termination for contested judgment patent cases 28.2 months such that this factor would also be neutral if the case were transferred to the Northern District of California.

"sold throughout the United States" confer "no more or less of a meaningful connection" to one venue over any other).  Finally, any ties alleged by NFCT to this District were manufactured for the purposes of litigation and should not be considered for the reasons discussed above.

Because the Southern District of California has a significant local interest in this case and this District does not, this factor favors transfer. [13]

### iii.   The Familiarity with Patent Law and Avoidance of Potential Conflicts of Law

The third and fourth public interest factors are both neutral here. Both the Southern District of California and the Eastern District of Texas are well acquainted with patent cases. Thus, the third factor is neutral as to transfer.  *See TS Tech*, 551 F.3d at 1320 (noting that "patent claims are governed by federal law, and as such both [the transferee and transferor] courts are capable of applying patent law to infringement claims"). Also, a transfer does not present a potential for conflict of laws, because federal patent law will apply, regardless of where this case is heard.  Therefore, the fourth factor is also neutral. [14]

## V.   CONCLUSION

For all of the above, LG respectfully requests that its motion to dismiss, or, in the alternative, sever claims against NFCT and transfer such claims to the Southern District of California under 35 U.S.C. § 1404(a) be granted.

Respectfully submitted,


Dated:  February 5, 2014                    By:_ /s/ Melissa  Smith _____
                                                  Melissa Smith
                                                  SBN 24001351
                                                  Gillam & Smith LLP

---

[13] In the alternative, the Northern District of California's interest in this case is at least equal (if not greater than) this District's interest such that this factor is at least neutral.

[14] In the alternative, for the same reasons, this factor would also be neutral if the case were transferred to the Northern District of California.

303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Fax: 903-934-9257
melissa@gillamsmithlaw.com

Michael J. McKeon
D.C. Bar No. 459780
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331
mckeon@fr.com

Attorneys for Defendants
LG ELECTRONICS USA, INC. and
LG ELECTRONICS MOBILECOMM U.S.A.,
INC.

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on the 5th day of February, per Local Rule CV-5(a)(3).

*/s/ Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Plaintiff and counsel for Defendants conferred on February 5, 2014, and although efforts were made to reach an agreement, Plaintiff opposes the filing of this motion.

*/s/ Melissa R. Smith*
Melissa R. Smith