**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| NFC TECHNOLOGY, LLC, | |
|     Plaintiff, | |
| v. | Civil Action No. 2:13-cv-1058 |
| | The Hon. Rodney Gilstrap |
| HTC AMERICA, INC., | |
| LG ELECTRONICS USA, INC, | |
| AND LG ELECTRONICS MOBILECOMM | |
| U.S.A, INC. d/b/a LG MOBILE PHONES, | Jury Trial Demanded |
|     Defendants. | |

**REPLY TO**
**NFC TECHNOLOGY, LLC'S OPPOSITION [D.I. NO. 49]**
**TO DEFENDANTS LG ELECTRONICS U.S.A, INC., LG ELECTRONICS**
**MOBILECOMM U.S.A., INC., AND HTC AMERICA, INC.'S MOTION [D.I. NO. 43]**
<u>**TO STAY UNDER THE "CUSTOMER SUIT EXCEPTION"**</u>

Disregarding the "customer suit exception" doctrine and the policy that it serves, plaintiff NFCT's opposition conjures a conspiracy between Defendants[1] and NXP to avoid litigating in this district.  This is far from the truth.  For example, LGEUS and LGEMU have withdrawn their motion to transfer, and HTCA agreed to a stay as an alternative to its pending motion to transfer.  Defendants are instead seeking to conserve private and judicial resources so that the declaratory judgment suit (in which they are not parties) brought by the chip manufacturer NXP can resolve the infringement and invalidity issues.  After all, the NXP chips are the true accused products here, and NXP is in the best position to defend its technology in its *now-first-filed* action.  And if NFCT prevails against NXP, NFCT will be free to seek recovery in this action or from NXP.

I.  **Defendants Are Mere Resellers of Phones Allegedly Having NXP Chips, Making the "Customer Suit" Doctrine Even More Applicable in This Now Second-Filed Suit**

When it filed its original complaint in December 2013, NFCT made the strategic decision to only target U.S. companies that are, in fact, resellers of mobile products: LGEMU and HTCA merely import or resell mobile products designed by related corporate entities.[2]  [D.I No. 13 (answer) at ¶ 7; D.I. No. 35-1 (decl.) at ¶ 4.]  Neither LGEUS, LGEMU, nor HTCA makes or designs the phones at issue in this case or the accused NXP chips contained in these phones.  The defendants are thus true resellers for which the "customer suit exception" doctrine was created.

When faced with these facts, NFCT argued that the defendants are not true resellers because related entities—LG Electronics Inc. ("LGE") and HTC Corp. ("HTCC")—design and make the phones.  [Oppo. (D.I. No. 49) at 2, 8, 11-12.]  This argument has one major flaw: LGE and HTCC are not parties to the present action.  [*See generally* D.I. No. 1 (complaint).]  To buttress its argument, NFCT tried to game the legal system by filing an amended complaint by

---

[1] The current defendants in this case are LG Electronics U.S.A., Inc. ("LGEUS"), LG Electronics MobileComm USA, Inc. ("LGEMU"), and HTC America, Inc. ("HTCA").

[2] Defendant LGEUS does not make, import, sell, or offer to sell mobile products.

adding LGE and HTCC as named defendants just *two business days* before filing its opposition brief. [D.I. No. 46 (amd. complaint).] Yet, NFCT has not served LGE and HTCC, leaving only the original defendants—which are true resellers (or do not sell phones)—in the case.

Further, by filing an amended complaint, NFCT necessarily converted this suit to the *second-filed* action involving the patents-in-suit. NFCT filed the original complaint in this case on December 5, 2013, and NXP filed its declaratory judgment ("DJ") action on March 14, 2014. [D.I. No. 1; Mtn. (D.I. No. 43) Ex. 12.] NFCT then filed its amended complaint nearly a month later on April 10, 2014. [D.I. No. 46.] Because an amended complaint supersedes and voids the original complaint, *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985), this suit is the first-filed action only if it can relate back to the filing date of the original complaint. *E.g., Halo Elecs., Inc. v. Bel Fuse Inc.*, 2008 WL 1991094, at *2 (N.D. Cal. May 5, 2008) (finding later-filed action to be the first-filed suit where amended complaint in earlier New Jersey action did not relate back); *Mann Design, Ltd. v. Bounce, Inc*., 138 F.Supp.2d 1174, 1178 (D. Minn. 2001) (dismissing claims in favor of a later-filed suit because of no relation back); *Mallinckrodt Med. Inc. v. Nycomed Imaging AS*, 49 U.S.P.Q.2d 1474, 1998 WL 962203 (E.D. Mo.1998) (case became second-filed where lack of mistake in naming new defendant prevented relation back).

To relate back when adding a new party, NFCT must satisfy the strict requirements of Rule 15(c)(1)(C) for relation back.[3]  *E.g., Martell v. Trilogy, Ltd.*, 872 F.2d 322, 324 (9th Cir. 1989). But NFCT cannot do so because it waited 126 days after the original complaint to add LGE and HTCC to this action, and filed its amended complaint without providing any evidence that it made a mistake in the identity of the correct parties. NFCT was well aware of LGE and HTCC when it filed suit, and deliberately chose to omit them from the original complaint. [D.I.

---

[3] Rule 15(c)(1)(C) requires, among other things, that "*within the period provided by Rule 4(m)* [i.e., 120 days] for serving the summons and complaint, the party to be brought in by amendment: … (ii) knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*."

2

No. 53 at 15-16 (discussing pre-suit interactions with LGE and HTCC); D.I. No. 55 at ¶ 3 (admitting pre-suit interactions directed toward HTCC).] A deliberate choice cannot qualify as a mistake under Rule 15(c)(1)(C). *Krupski v. Costa Crociere SpA*, 560 U.S. 538, 549 (2010). As NFCT did not make a mistake about a party's identity and filed its amended complaint beyond 120 days from the original complaint, the amended complaint cannot relate back to the original complaint's filing date and this suit is now the second-filed action. A stay is even more warranted in light of this new fact.

## II.     The NXP Chips Are The True Accused Products in This Action

While NFCT stresses that it is targeting LG-branded and HTC-branded mobile products, NFCT does not dispute that it only accused—and limited its allegations to—LG and HTC products *containing an NXP chip*. [Mtn. at 5-7 & Exs. 14-15; Oppo. at 9-10.] A simple review of the infringement contention charts, where NFCT almost exclusively cites to NXP documents, confirms that NXP's chips are the true accused products. [Mtn. Exs. 15-16; Oppo. Exs. B-E.]

To obfuscate this fact, NFCT advances two arguments. First, it argues that inclusion of three additional components (a processor, an antenna, and a battery) in the charts for the '664 patent negates the application of the "customer suit exception" in this case. [Oppo. at 4-5, 9-10.] This argument is legally specious, because courts routinely apply the "customer suit" doctrine to stay cases, like this one, where customers sell a product incorporating an allegedly infringing component.[4] For example, relying on this doctrine, the Federal Circuit affirmed the district court's injunction staying a suit against the retail sellers of guns whose handgrip part allegedly infringed the patent-in-suit. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1460 & 1464 (Fed. Cir. 1990); *see also Honeywell Int'l, Inc. v. Audiovox Commc'ns Corp.,* 2005 WL 2465898, at *2-4

---

[4] The processor, battery, and antenna were already well-known in the prior art when the '664 patent was filed. [D.I. No. 46-1 ('664 patent) at 1:50-53, 2:1-4 (noting the prior art's use of control circuit, battery and antenna).]

(D. Del. May 18, 2005) (staying action against companies that sold products incorporating accused LCD parts while action against manufacturers of LCD parts proceeded forward).

Second, NFCT asserts that Defendants' statements identifying the accused products as "mobile products" in earlier motions to dismiss/transfer contradict the assertion that the NXP chips are the accused products. [*Id.* at 5-6, 9-10.]  But Defendants' motions to dismiss/transfer relied on NFCT's complaint, which focused on mobile products and which, by NFCT's own admission, did not identify the NXP chips as an accused product.  [D.I. No. 1 (complaint); Oppo. at 3 ("nor does the Complaint identify NXP chips as an accused product").]  Only after NFCT served its infringement contentions on March 24, 2014 did it become clear and indisputable that NFCT was exclusively targeting NXP chips and products sold by LGEMU and HTCA that incorporated these NXP chips.  There is no contradiction – the accused instrumentalities are the NXP chips, which are directly at issue in the now first-filed NXP declaratory judgment action.

**III.     A Stay Will Streamline Trial and Will Not Deprive NFCT of Its Damages Choice**

NFCT's argument based on damages also falls wide of the mark.  [Oppo. at 2, 13-14.] Defendants are not forcing NFCT to recover damages from NXP.  Defendants are instead seeking to conserve private and judicial resources in light of NXP's DJ action, because NXP is familiar with the architecture and operation of its chips and is thus in the best position to defend its chips against NFCT's allegations.  A stay in this case would allow the case against the "true defendant" (i.e., NXP) and implicating the true adversaries targeting NXP (i.e., France Brevets and Inside Secure, plus NFCT) to resolve infringement and invalidity issues on the merits. Contrary to the slippery slope of piecemeal disputes that NFCT postulates [Oppo. at 14], a stay in favor of the NXP DJ action will streamline trial in this case.  Because Defendants will be bound by the final judgment in the NXP case on these two issues [Mtn. at 12], NFCT can, if it prevails against NXP, choose to recover damages from NXP or Defendants.

4

Rather than depriving NFCT of its choice of damages, a stay will avoid parallel, duplicative, and inconsistent rulings between two district court cases where there is only one overlapping party (the other parties are different).  Defendants are seeking the same solution that this Court adopted in *Secure Axcess, LLC v. Nintendo of Am.*, 2014 WL 986169 at *5 (E.D. Tex. Mar. 7, 2014), where it stayed the suits against the customers while allowing the suit against the manufacturer to proceed first.  In that case, as here, the plaintiff retained its option for recovery.

### IV.    NXP's Declaratory Judgment Action Qualifies as A Manufacturer Suit

Contrary to its position on the reseller defendants in this action, NFCT argues that the California action does not qualify as a manufacturer suit under the "customer suit" doctrine because it is NXP USA's parent corporation, not NXP USA itself, that makes and sells the accused NXP chips.  [Oppo. at 10.]  NFCT cites no precedent to support this novel requirement that only the manufacturing entity can protect its customers.  [*Id.*]  The law and its policy on the "customer suit" doctrine are not so strict in an age of multinational conglomerates with intricate division of labors among related companies.  *See SecureAxcess*, 2014 WL 986169 at *1 (treating Nintendo of America as the manufacturer although it is the U.S. sales arm of its Japanese parent).  Here, NXP USA is a wholly owned subsidiary of NXP B.V., and acts under its parent's guidance.  [D.I No. 35-12 (Casey Decl.) at ¶ 2.]  Indeed, that NXP B.V. chose to use its U.S. subsidiary to defend its products is certainly no more removed from France Brevets' decision to use an American shell entity (NFCT) to bring this suit.  When manufacturers *choose* to use subsidiaries to initiate suits under the "customer suit" doctrine, those subsidiaries should be treated as the parent.  *See SecureAxcess*, 2014 WL 986169 at *1.  NXP USA has the right incentive to defend its chips, and Defendants are willing to be bound by the results of that suit.

### V.    Conclusion

Defendants respectfully request that their motion to stay be granted.

5

Dated:  April 24, 2014

Respectfully submitted,

*/s/ Matthew C. Bernstein*
Matthew C. Bernstein
Lead Attorney
CA State Bar No. 199240
mbernstein@perkinscoie.com
Thomas N. Millikan *(Pro Hac Vice)*
CA State Bar No. 234430
tmillikan@perkinscoie.com
Ryan B. Hawkins *(Pro Hac Vice)*
CA State Bar No. 256146
rhawkins@perkinscoie.com
Miguel J. Bombach *(Pro Hac Vice)*
CA State Bar No. 274287
mbombach@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA 92130-3334
Tel: 858-720-5700
Fax: 858-720-5799

Jennifer Parker Ainsworth
Texas State Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
P.O. Box 7339 [75711]
Tyler, Texas 75701
Tel: 903-509-5000
Fax: 903-509-5092

Attorneys for Defendant

HTC AMERICA, INC.

By:  */s/ Melissa  Smith*
Melissa Smith
SBN 24001351
Gillam & Smith LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Fax: 903-934-9257
melissa@gillamsmithlaw.com

Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Christian A. Chu (*Pro Hac Vice*)
CA Bar No. 218336
chu@fr.com
Scott A. Elengold (*Pro Hac Vice*)
D.C. Bar No. 976559
elengold@fr.com
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331
mckeon@fr.com

Attorneys for Defendants

LG ELECTRONICS USA, INC. and LG ELECTRONICS MOBILECOMM U.S.A., INC.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service, on this the 24th day of April, 2014.

> */s/ Melissa Smith*
> Melissa Smith